THE STATE on the Relation of BENNET and Another *v.* NELSON and Others.

An officer levying on personal property must use ordinary diligence in preserving it. He may entrust such property to the care of a servant, or the execution-defendant, who is required to use the same degree of diligence, and the officer is liable for his negligence.

If property levied on by an officer be carried off by high water, and that fact would excuse him from selling it to make the money on the execution, it would be proper for him to return such fact as the reason of his not selling the property.

APPEAL from the *Vanderbugh* Circuit Court.

PERKINS, J.—Debt upon the official bond of a constable against him and his sureties. The breach of the bond complained of is negligence in the care of property taken in execution. The suit was commenced before a justice of the peace where there were two trials by jury, both of

which resulted in favor of the defendants. The cause was again tried by jury, on appeal, in the Circuit Court, and again decided in favor of the defendants. The evidence and instructions of the Court are upon the record. The facts, so far as they need be stated, are as follow: The plaintiff proved a judgment against *B. T. Head*, and that an execution thereon was placed in the hands of the constable sued, *Hiram Nelson*—that he returned it with the following indorsements:

"Received, *October* 17th, 1844. *H. Nelson*, C. P. T." [constable of *Pigeon* township].

"*December* 3d, 1844. Given up, to satisfy this execution, a wharf-boat lying on the ground at the steamboat landing. *H. Nelson*, C. P. T."

"*December* 17th, 1844. Offered the above for sale but could not sell for two-thirds the appraised value—left boat in defendant's care."

"The property mentioned above being taken off by high water, I have levied upon the wharf-boat of *B. T. Head* at the boat landing. *Evansville, May* 6th, 1845. *H. Nelson*, C. P. T."

"Advertised to sell on the 30th *August*, 1845. Sale stopped by an injunction, *August* 30, 1845."

The plaintiff also proved the appraised value of the boat.

On behalf of the defendants, *John P. Henderson* testified that he saw the boat first levied upon, in the summer and fall of 1844, lying high and dry upon the bank at the lower part of the steamboat landing at *Evansville*, and some 30 or 40 feet above low water mark; that said boat had a line attached to it, but whether said line was fastened to the shore or any permanent object he could not tell; that afterwards the river rose and he saw the boat afloat at or near the same place where she had been aground, and that she was lying, when afloat, on the inside of the steamboat *Market-Boy*, and on the stern of the wharf-boat of *B. T. Head*, and that she remained in this position five or six days; that he did not know how said boat was cabled or whether she was cabled at all or

not, but supposed she was, as he thinks she could not have remained afloat so long as she did, unless fastened in some way; that she was not much exposed to the drift, being protected by the steamboat outside, and the wharf-boat above her, but that drift might possibly have got inside of the steamboat and broke loose the boat in question; that when the water rose the cabin floated off and a few days afterwards the hull floated away; that the hull was aground when the cabin floated off; that the steamboat *Pitcher* brought back a part of the cabin, but at whose instance he did not know; that it did not require much trouble to keep a boat at the place where this was lying, nor was there much difficulty in doing it with a good line; witness would not take care of a boat in that position for less than 1 dollar and 50 cents a week; that boats at that landing sometimes floated off when reasonable care was taken to prevent them so doing, and that his own boats had, several times, got loose; he saw Mr. *Head* caulking the boat before she floated away,

*Martin* testified to a portion of the same facts, and the additional one that *Nelson* came down to the landing two or three times a week to see about the boat.

The Court instructed the jury that the plaintiff, to recover in this action, must prove negligence in the constable in taking care of the property levied on; and that if they believed from the evidence that he took due care thereof, they must find for the defendants.

The plaintiff asked the Court to instruct that if the constable levied on property of *Head* sufficient to satisfy the execution and delivered the same into the possession and care of *Head* without taking a delivery-bond for the same, and a loss of the property ensued, he and his sureties are liable to the plaintiffs in the execution for the amount thereof, and the loss of the property is at the peril of the officer; which instruction the Court gave, with this addition, that the fact of a delivery without taking a delivery-bond is not, of itself, a negligence of duty on the part of the officer.

The plaintiff asked the Court to instruct that, by the

levy of the execution on the boat of *Head*, the judgment

was satisfied until it was shown by the constable's return that the property was insufficient for that purpose; and that the constable's return that the boat was taken off by the high water was unknown to the law, and not sufficient to base an *alias* execution upon, on the same judgment. The Court gave the first proposition, and refused the second, embraced in this instruction.

When an officer has levied upon personal property, he may, by statute, re-deliver the same to the execution-defendant, if said defendant execute to him a delivery-bond for its return again at a certain time; and when re-delivered under these circumstances, the officer is not responsible for the care of the property; but the execution-defendant is not bound to execute a delivery-bond and receive back the property; and if he do not, the officer must take charge of it. And the question is, how is he to keep it? What kind of care must he take of it? *Story*, in his work on Bailments, says: "If it is lost by his negligence, he will be responsible therefor. But what degree of negligence will make him responsible does not seem to have been directly decided. He would, doubtless, be responsible for gross negligence and fraud; but, whether he would be responsible for ordinary negligence, does not appear to have been decided by any adjudged case; although, as he is a bailee for compensation, it may be thought, that he ought to be bound, by the common rule in such cases, to ordinary diligence." Section 130.

It seems to us that sheriffs and constables, irrespective of their character as bailees, should be held to, at least, ordinary diligence in the discharge of this, as well as their other duties. If an officer must use such diligence in endeavoring to find property upon an execution, why should he not use equal diligence in preserving the property after it is levied on? Constables and sheriffs are public officers, the discharge of whose duties seriously affects the rights of citizens. They individually take oath and give bond for a faithful performance of their trusts; and it seems to us that, as public officers, they should be held to

Nov. Term,
1849.

THE STATE
v.
NELSON.

ordinary diligence. Such being the rule, then, by which these officers are governed, is it material whether this diligence is exercised by themselves personally or by others, even by execution-defendants?

Sheriffs and constables cannot always personally take charge of the property they may become possessed of in the discharge of their duties. Its character or quantity prevents. They must entrust it to servants, for whose acts they are responsible. If the property be lost by the negligence of the servant, the officer will be liable. But no higher degree of diligence will be required of the servant than is required of the officer. Was ordinary diligence used to preserve the property? must be the question in cases of loss. Now, we do not see why the rule should be different where the officer makes the execution-defendant his servant to take care of the property, than in other cases. It may be more hazardous to the officer, for many reasons, to so intrust it, but, if he do so, and the property be lost, and he be sued for it, can the question be other than this—was ordinary diligence used to save it? It seems to us not. This diligence, it will devolve upon the officer to prove, was taken. The execution-defendant certainly can exercise such diligence as well as any other person if he will. From what has been said, it will be seen that we do not think there was any error, of which the plaintiff can complain, in the instructions given below; nor was there any in refusing those asked and not given. And, upon the evidence, we think the jury might infer that ordinary diligence was used in this case.

As to the return of the officer that the boat was taken off by high water, if that fact excused him from selling the boat to make the money on the execution, it must be a proper one for him to make return of as the reason of his not selling.

*Per Curiam.*—The judgment is affirmed.

*C. Baker*, for the appellant.